**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY YOON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEYOND MEAT, INC., a Delaware Corporation<br><br>Defendant. | Case No. '22CV0855 MMA AGS<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Mary Yoon ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action against Defendant Beyond Meat, Inc. ("Beyond Meat" or "Defendant").

2. Beyond Meat manufactures, advertises, and sells plant-based meat substitute products, such as the plant-based ground beef, sausages, meatballs, and hamburger patties.

3. Beyond Meat claims that its products provide "equal or superior protein" as compared to real meat, but that is false.

4. Two different U.S. laboratories have independently and separately conducted testing on a wide range of Beyond Meat products. The test results were consistent with each other: the results of both tests show that Beyond Meat products contain significantly less protein than what is stated on the product packaging.

5. As such, Defendant has engaged in widespread false and deceptive conduct by overstating the amount of protein in its products.

6. Plaintiff asserts claims against Defendant violations of the California Consumers Legal Remedies Act, California Civil Code § 1750, *et. seq*. ("CLRA"), violation of the Unfair Competition Law, California Business & Professions Code § 17200, and unjust enrichment.

## THE PARTIES

7. Plaintiff Mary Yoon is domiciled in Corona, California.

8. Ms. Yoon purchased Beyond Meat's Beyond Burger Plant-Based Patties several times starting in approximately January 2020.

9. Beyond Meat products are sold at many stores in and around Corona,

1
CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1  California, such as Vons, Target, and Albertsons. Ms. Yoon purchased the products
2  at the Vons and Target stores in her area. To the best of her recollection, Ms. Yoon
3  paid approximately $5-6 dollars for the product, which is the typical price range for
4  the Beyond Burger Plant-Based Patties.

5      10.    When Ms. Yoon purchased the products, she relied on various labeling
6  representations about the nutritional qualities of the product, including that it had 20
7  grams of plant protein per serving, and a daily protein value of 40%. Ms. Yoon read
8  and relied on both the front labeling, and the nutrition information on the back of the
9  package.

10     11.    However, the Patties Ms. Yoon purchased did not have 20 grams of
11 protein per serving, and did not provide a daily protein value of 40%. Instead, the
12 products would have had approximately 18 grams of protein, and an actual daily
13 protein value of approximately 35%.

14     12.    Ms. Yoon would not have purchased the Patties if she had known at the
15 time that the labeling was false.

16     13.    Ms. Yoon overpaid for the products as a result of the false labeling.

17     14.    Ms. Yoon regularly goes to stores where Beyond Meat Products are sold.
18 Plaintiff would purchase Beyond Meat Products again in the future if the products
19 accurately disclosed the amount of protein in them. However, if that change were
20 made, Plaintiff would have no way to know if the product labeling was in fact true.
21 As a result, she may either refrain from purchasing Beyond Meat Products in the
22 future or may purchase them incorrectly assuming that they have been improved such
23 that the labeling disclosing the amount of protein in them per serving is correct.

24     15.    Defendant, Beyond Meat, Inc. is a Delaware Corporation with its
25 headquarters in El Segundo, California.

26                          **JURISDICTION AND VENUE**

27     16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.
28 § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all

2
CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

17. Personal jurisdiction is proper because Defendant is a resident of California. Defendant also regularly and continuously transacts business in California, including selling and falsely marketing products throughout the State.

18. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) because Defendant resides in this district and market and falsely advertise its products here.

## STATEMENT OF FACTS

19. **Products At Issue (the "what"):** All of Defendant's Beyond Meat products, including but not limited to Sausage Plant-Based Dinner Links Hot Italian 14 oz, Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz, Beyond Beef Plant-Based Patties, Beyond Beef Plant-Based Ground Beef, Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic, Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy, Beyond Chicken Plant-Based Breaded Tenders Classic, Beyond Meatballs Italian Style Plant-Based Meatballs, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic ("Beyond Meat Products" or the "Products").

20. **Relevant Time Period (the "when"):** All of the misrepresentations at issue here were uniformly and consistently made at all times during the last four years, at least. There have been no material changes to the product labeling during the relevant period.

21. **Labeling At Issue (the "where")**: For all Products at issue, the labeling describes the amount of protein, expressed in grams per serving and as a "Daily Value" (or "DV"). The Daily Value is printed on nutrition fact labels as "% DV" or "% Daily Value." Daily Value plays an important role in food labeling because the information allows people to judge the nutrient content of food products.

22. For example, the front packaging of the Beyond Burger Patties states in

3
CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

large, bold lettering that the products have "20 grams of plant protein per serving":



23. The nutrition label on the back of the Beyond Burger Patties likewise states that the product contains 20 grams of protein per serving, and a 40% daily protein value.

24. Other Beyond Meat Products similarly include a statement on the front about the number of grams of protein, and a statement on the nutrition label repeating the number of grams of protein, and a statement of the percentage of daily protein value.

25. **Misrepresentations at Issue (the "why")**:

26. Protein is an essential part of a healthy diet. Many consumers seek out high-protein products due to the benefits of protein. In addition, vegetarians often find it challenging to get sufficient protein intake in their diets, and therefore seek out products like the Products at issue here.

27. The Food and Drug Administration requires manufacturers to publish a product's protein content on its nutritional label, which is a statement of the number of grams of protein in a serving.

28. Generally, the "Nitrogen Content Method" is used to calculate the

1 protein content of a food product.  Under this methodology, protein content is
2 calculated on the basis of the factor of 6.25 times the nitrogen content of the food as
3 determined by the appropriate method of analysis as given in the "Official Methods
4 of Analysis of the AOAC International," unless there is an official procedure for a
5 specific food that requires another factor.

6       29. However, the nitrogen method is not the most accurate way to describe
7 protein content, and federal law requires disclosure of *protein quality*, which is
8 determined through a more rigorous testing methodology called the Protein
9 Digestibility Amino Acid Corrected Score ("PDCAAS") to calculate the "corrected
10 amount of protein per serving.

11       30. The "corrected amount of protein (gram) per serving" is equal to the
12 actual amount of protein (gram) per serving multiplied by the amino acid score
13 corrected for protein digestibility.  The protein digestibility corrected amino acid
14 score is determined by methods given in the "Protein Quality Evaluation, Report of
15 the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome,
16 1990.

17       31. By law, Beyond Meat is required to use the PDCAAS calculation for the
18 Products rather than some other less-sophisticated method.  For any product making a
19 protein claim, the product must contain a statement of protein content as a percentage
20 of the Daily Reference Value calculated using the "corrected amount of protein"—an
21 amount that is not calculated by simply multiplying the amount of nitrogen by 6.25,
22 but by taking into account the "protein quality value," or "protein digestibility-
23 corrected amino acid score." *See* 21 C.F.R. § 101.9(c)(7)(ii).

24       32. For the products at issue here, the protein content must be stated as a
25 percentage of the Daily Value using the corrected amount of protein.

26       33. Defendant's stated protein amount and protein DV% claims are false and
27 misleading.  The amount of protein determined by nitrogen in Defendant's products
28 are less than what is represented.

34. Moreover, the DV% of Protein for all of the Products is less than the DV% represented on the product labeling.

35. Defendant knows that its product labeling is false. It is routine practice in the food industry to regularly test products to confirm the accuracy of nutrition labeling. Defendant therefore would have tested the Products before putting them on sale.

## CLASS ACTION ALLEGATIONS

36. Plaintiff seeks to represent the following classes:

- **National Class:** During the fullest period allowed by law, all persons in the United States who purchased any of the Products for personal use and not for resale within the United States (the "National Class").

- **Consumer Fraud Ten-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products for personal use and not for resale from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").

- **California Class:** all persons in California who purchased any of the Products for personal use and not for resale within California

37. Plaintiff reserves the right to modify the class definitions as appropriate based on further investigation and discovery obtained in the case, including through the use of multi-state subclasses to account for material variations in state law, if any.

38. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

39. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal

and factual questions include, but are not limited to, whether Defendant made misrepresentations on the labeling, whether Defendant knew the misrepresentations were false, and whether Plaintiff and class members are entitled to monetary or injunctive relief.

40. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, purchased the Products.

41. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

42. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

43. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendant.

//

//

//

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

# COUNT I
## Violation of the Consumer Legal Remedies Act ("CLRA")
### (Civil Code §§ 1750, *et. seq.*)

44. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

45. Plaintiff brings this Count individually and on behalf of the members of the Classes.

46. Plaintiff and the Class Members are consumers who purchased the Products for personal, family, or household purposes. Accordingly, Plaintiff and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

47. At all relevant times, the Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

48. At all relevant times, Defendant was a "person" as that term is defined in Civ. Code § 1761(c).

49. At all relevant times, Plaintiff's purchase of the Products were "transactions" as that term is defined in Cal. Civ. Code § 1761(e). Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

50. The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Products to Plaintiff and the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

51. Defendant represented that the Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

52. Defendant represented that the Products were of a particular standard,

quality, and grade, when they were of another, in violation of California Civil Code § 1770(a)(7).

53. Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by overstating the amount of protein in the Products.

54. Defendant advertised and labeled the Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.

55. Defendant knew that the amount of protein stated on the packaging was false.

56. Plaintiff and class members suffered injuries caused by Defendant's misrepresentations.

57. Plaintiffs seek injunctive relief, restitution, and punitive damages.

## COUNT II
### Violation of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.*

58. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

59. Plaintiff brings this Count individually and on behalf of the members of the Classes.

60. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful and unfair conduct.

61. Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above.

62. As more fully described above, Defendant's misleading marketing, advertising, packaging and labeling of the Products is likely to deceive reasonable consumers.

63. Defendant's acts and practices described above also violate the UCL's

proscription against engaging in *unfair* conduct.

64. Plaintiff and the members of the Class and Subclass have suffered harm as a result of the violations of the UCL, and they lack an adequate remedy at law to address the conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not as equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law

65. There is no benefit to consumers or competition from deceptively marketing and labeling the Products.

66. Plaintiff and the other class members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

67. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

68. Defendant's violations of the UCL continue to this day.

69. Plaintiff seeks all available relief under the UCL.

## COUNT III
### Unjust Enrichment

70. Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff and the other members of the Classes conferred benefits on Defendant by purchasing the Products.

72. Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiff and the other members of the Classes.

73. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Classes because they would have not purchased the Products if Defendant had disclosed that the Product labeling overstated the amount of protein.

74. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory and punitive amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:  June 10, 2022  				Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Joel D. Smith*
             Joel D. Smith

Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Email:  fklorczyk@bursor.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED